















RYC   1/6/06   15:20

3:05-CV-01742   MOSER V. TRIARC COMPANY INC

*3*

*AMDCMP.*

1  Anthony J. Dain (Bar No. 98947)
2  Frederick K. Taylor (Bar No. 159838)
   Frederic G. Ludwig, III (Bar No. 205332)
   PROCOPIO, CORY, HARGREAVES
3     & SAVITCH LLP
   530 B Street, Suite 2100
4  San Diego, California 92101
   Telephone: 619.238.1900
5  Facsimile: 619.235.0398

6  Attorneys for Plaintiff,
   TIMOTHY W. MOSER

7

**FILED**

06 JAN -6 PM 2: 08

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

8

9                    UNITED STATES DISTRICT COURT

10              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11  TIMOTHY W. MOSER, an individual,         Case No.: 05 CV 1742 B (POR)

12              Plaintiff,                    **FIRST AMENDED COMPLAINT FOR
                                              INTENTIONAL INTERFERENCE WITH
13  v.                                        CONTRACTUAL RELATIONS AND
                                              INTENTIONAL INFLICTION OF
14  Defendant TRIARC COMPANIES, INC., a       EMOTIONAL DISTRESS**
    Delaware corporation,
15                                            **DEMAND FOR JURY TRIAL**
                Defendant.
16

17

18        Plaintiff TIMOTHY W. MOSER ("MOSER") respectfully submits the following First

19  Amended Complaint for intentional interference with contractual relations and intentional

20  infliction of emotional distress.

21                              **INTRODUCTION**

22        1.    MOSER brings this action in diversity, to secure relief against Defendant

23  TRIARC COMPANIES, INC. ("Defendant TRIARC"), a Delaware corporation, who wrongfully

24  and intentionally interfered with MOSER's contractual relationship with third-party ENCORE

25  CAPITAL GROUP, INC. ("ENCORE"), and committed other wrongful and damaging acts

26  against MOSER, as described in greater detail below.

27        2.    MOSER seeks relief barring Defendant TRIARC from further engaging in acts

28  designed to disrupt MOSER's contractual relationships and inflict emotional distress upon

1  MOSER.  MOSER ⬤ seeks recovery of monetary dam ⬤ from Defendant TRIARC for the

2  injuries he suffered, and continues to suffer, as a result of its wrongful acts.

3  **PARTIES**

4      3.    MOSER is an individual, who resides in Phoenix, Arizona.

5      4.    On information and belief, MOSER alleges Defendant TRIARC is a corporation

6  organized and existing under the laws of the State of Delaware, with its principal place of

7  business located at 280 Park Avenue, New York, New York 10017.

8  **JURISDICTION AND VENUE**

9      5.    This is a civil action arising in diversity, with claims for intentional interference

10  with contractual relations and intentional infliction of emotional distress.

11      6.    Subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1332 in that it

12  involves claims arising between parties of diverse citizenship, and the amount in controversy

13  exceeds $75,000.00.

14      7.    Venue in this district is proper under 28 U.S.C.§ 1391 because a substantial part of

15  the events or omissions on which the claims are based occurred in this district.

16  **STATEMENT OF COMMON FACTS**

17  A.    **BACKGROUND INFORMATION**

18      8.    MOSER is an attorney, and partner, with the international law firm of Square,

19  Sanders & Dempsey L.L.P. ("Squire Sanders").

20      9.    Defendant TRIARC at material times and directly through subsidiaries or affiliates

21  of Defendant TRIARC was a major shareholder, and beneficially owned a significant percentage

22  of the outstanding shares of third-party ENCORE, a San Diego-based company in the business of

23  purchasing, selling, and servicing charged-off consumer debt.  On information and belief,

24  Defendant TRIARC and certain of its officers and affiliates through which Defendant TRIARC

25  acts, beneficially owned or had voting and dispositive power over what is considered voting

26  control of ENCORE.  At material times, Defendant TRIARC through its officers had frequent,

27  many times weekly, conferences with ENCORE's Chief Executive Officer in San Diego,

28  California during which Defendant TRIARC was provided material financial information by

2
**FIRST AMENDED COMPLAINT**

1    ENCORE's Chief ▆▆tive Officer.   On information ▆ belief, during many of these

2    conferences Defendant TRIARC's approved and/or directed actions to be taken by ENCORE.

3         10.    During the fall of 2000, MOSER was recruited by ENCORE, and in November

4    2000 he left a lucrative legal practice for a position as Executive Vice President, General

5    Counsel, and Secretary of ENCORE.   MOSER's duties also included extensive, numerous and

6    varied business functions and responsibilities that were non-legal in nature.

7         11.    On information and belief, Defendant TRIARC or certain of its officers or

8    directors actively participated in the negotiation of, and ultimately approved Moser's

9    employment contract with ENCORE.   While employed by ENCORE, MOSER routinely

10   interacted with certain employees and/or officers of Defendant TRIARC, who closely monitored

11   the activities of ENCORE.   Defendant TRIARC's officers, including its General Counsel

12   specifically requested that MOSER advise and provide Defendant TRIARC and its General

13   Counsel information regarding any matters that MOSER had reason to believe were of a serious

14   nature that were either not appropriately being addressed by ENCORE's senior management or

15   not fully or accurately being provided by ENCORE's Chief Executive Officer or Chief Financial

16   Officer to Defendant TRIARC or ENCORE's Board of Directors.

17        12.    During the spring of 2001, MOSER uncovered numerous, specific, detailed, and

18   documented facts demonstrating such matters of a serious nature (the "Factual Matters Raised").

19        13.    MOSER fully complied with all applicable laws and duties regarding the Factual

20   Matters Raised.   MOSER promptly notified ENCORE's Board of Directors and Audit Committee

21   of the Factual Matters Raised.   MOSER's actions would be in full compliance with Sarbanes-

22   Oxley.

23        14.    At the request of Defendant TRIARC's employees, officers and General Counsel,

24   MOSER provided certain financial analysts and officers, including the General Counsel of

25   Defendant TRIARC evidence and/or documents proving the Factual Matters Raised.   A senior

26   officer and the General Counsel of Defendant TRIARC were alarmed by the Factual Matters

27   Raised and each expressed concern regarding the Factual Matters Raised.   On information and

28   belief, Defendant TRIARC's General Counsel contacted the law firm that frequently represented

3
**FIRST AMENDED COMPLAINT**

1   Defendant TRIARC ●IARC's Law Firm"). Defendant ●ARC acted in concert with others

2   and caused TRIARC's Law Firm to conduct an alleged investigation of the Factual Matters

3   Raised that excluded from the scope of the investigations facts and documents conclusively

4   proving the Factual Matters Raised. On information and belief, Defendant TRIARC and certain

5   of its officers participated in limiting the scope of the Firm's investigation such that many of the

6   Factual Matters Raised were beyond the limited scope of the Firm's limited investigation.

7   15. Later, in retaliation for MOSER notifying its ENCORE's Board of Directors and

8   Audit Committee of the Factual Matters Raised, ENCORE improperly, maliciously, and without

9   cause terminated MOSER's employment with the company.

10   16. In light of improper ENCORE's conduct, MOSER believed ENCORE was

11   potentially liable for wrongfully terminating him, and also liable for breaching various

12   contractual obligations ENCORE owed to MOSER. ENCORE and MOSER attempted to resolve

13   their differences without resorting to litigation by entering into a lengthy negotiation process. On

14   information and belief, Defendant TRIARC and certain of its officers were actively involved in

15   the negotiations between ENCORE and MOSER, with ENCORE repeatedly needing to secure

16   the consent of Defendant TRIARC and/or certain of its officers before agreeing to any proposed

17   settlement terms with MOSER.  On information and belief, the law firm that represented

18   ENCORE in the proposed settlement had several material communications with Defendant

19   TRIARC and certain of its officers regarding the proposed settlement with MOSER.

20   17. In June 2002, with the full knowledge, participation and approval of Defendant

21   TRIARC, and certain of its officers, ENCORE and MOSER entered into a formal settlement in

22   California regarding his employment with ENCORE and the monies owed MOSER pursuant to

23   his employment contract with the company (the "Settlement"). Attached hereto as **Exhibit A**,

24   and incorporated herein by reference, is a true and correct copy of the Settlement.

25   18. Among the terms of the Settlement, is the contractual acknowledgement by

26   ENCORE that MOSER's "Employment was not terminated by ENCORE 'for cause'." ENCORE

27   also agreed that in referring to MOSER's employment with ENCORE and the settlement,

28   ENCORE would only publicly state that "all issues between the parties have been resolved."

4

**FIRST AMENDED COMPLAINT**

1    Furthermore, ENCORE and MOSER declared and agreed ● [e]ach term of [the Settlement] is

2    contractual and not merely a recital." Finally, each party to the Settlement "agreed ... to refrain

3    or forbear from any act that would be inconsistent with the purposes of this Agreement...."

4    **B.    DEFENDANT TRIARC'S WRONGFUL CONDUCT TOWARD MOSER.**

5            19.    On information and belief, MOSER alleges Defendant TRIARC, individually and

6    in concert with others tortiously interfered with the contractual relationship between MOSER and

7    ENCORE, and conspired for purposes of, and/or aided and abetted others in, the intentional

8    infliction of emotional distress on MOSER.

9            20.    On information and belief, MOSER alleges that commencing in the spring of 2001

10   and continuing at least through the present date, Defendant TRIARC: (i) assisted in negotiation

11   of the Settlement between ENCORE and MOSER; (ii) reviewed, revised and/or commented on

12   the numerous public filings of ENCORE regarding MOSER's employment, ENCORE's

13   termination of MOSER's employment without cause, and the resolution of MOSER's

14   employment, as evidenced by the Settlement; (iii) participated in and/or directed the registration,

15   offering and/or sale of the shares of ENCORE by ENCORE, Defendant TRIARC, and others; (iv)

16   engaged in communications with ENCORE's legal counsel regarding MOSER's employment,

17   the Settlement and the registration of ENCORE Shares, (v) participated in advising, directing,

18   and controlling, ENCORE and its counsel regarding MOSER's employment and related matters

19   designed and intended to deny and/or reduce the benefits of MOSER under his contractual

20   relationships with ENCORE; (vi) directed or caused ENCORE to take numerous actions to deny

21   MOSER the benefits of MOSER's contractual relationships with ENCORE, including MOSER's

22   employment contract and the Settlement; and (vii) at all material times directed or controlled

23   ENCORE's material actions related to MOSER.

24           21.    On information and belief, MOSER alleges Defendant TRIARC and, certain of its

25   officers purposefully, intentionally, and maliciously directed and/or caused ENCORE to file a

26   Form S-1 with the SEC, which includes intentionally malicious and defamatory material

27   concerning MOSER.

28

5

**FIRST AMENDED COMPLAINT**

22.    The Former Officer Section disclosed that MOSER had notified ENCORE personnel of the fact that he "questioned" the accuracy of various projections, accounting treatments, financial disclosures, and other matters while employed by ENCORE. The Former Officer Section includes statements that ENCORE's audit committee "engaged a nationally recognized law firm to conduct an investigation of the issues raised by [MOSER]." This "nationally recognized firm" is herein after the "Firm."

23.    According to the Former Officer Section, after investigating "the issues raised by [MOSER]," the Firm concluded in a report that "[MOSER] had not pointed to any facts that reflected a lack of integrity or competence in [ENCORE's] management ... [the Firm] also concluded that none of the issues raised by [MOSER] required any new or amended public disclosures or other further action by [ENCORE'S] audit committee...." The Former Officer Section concludes with the assertion that "[MOSER] was placed on administrative leave and his employment was terminated ...."

24.    In fact, the statements in the Former Officer Section are false and/or misleading. MOSER did more than just "question" the various accuracy of various projections, accounting treatments, financial disclosures, and other matters. In reality, MOSER presented detailed facts and documents that irrefutably proved that MOSER was correct regarding the Factual Matters Raised. Some of these facts and documents were provided directly to Defendant TRIARC or certain of its officers. Moreover, MOSER was never "placed on administrative leave."

25.    On information and belief, MOSER alleges Defendant TRIARC and certain of its officers continue to direct or participate with ENCORE in publishing further false and defamatory material about MOSER. In addition to the first Form S-1, ENCORE published, and filed with the SEC, a Form S-1A, a Form S-3, and a number of Form S-3A's. These additional forms restated the Former Officer Section, or incorporated the Form S-1 by reference, which includes the Former Officer Section.

26.    On information and belief, MOSER alleges Defendant TRIARC or certain of its officers also caused, directed, and/or consented to ENCORE's efforts to incorporate and include

6

**FIRST AMENDED COMPLAINT**

1  the Former Officer ●on and the substantive stateme●ntained therein in prospectuses

2  printed and distributed to dealers, investors and potential investors.

3       27.     MOSER alleges ENCORE's publication of the false and defamatory Former

4  Officer Section constitutes a breach of the Settlement.

5       28.     On information and belief, MOSER alleges Defendant TRIARC and certain of its

6  officers engaged in the wrongful conduct described above for purposes of reaping significant

7  personal profit. Specifically, on information and belief, MOSER alleges that Defendant TRIARC

8  and certain of its officers or affiliates at material times controlled ENCORE at the time it directed

9  ENCORE to file the first Form S-1, and thereby breach the terms of the Settlement. The false

10  statements in the Former Officer Section were necessary, MOSER believes, to achieve a price of

11  ENCORE stock in the marketplace for the significant personal profit of Defendant TRIARC, or

12  certain of its officers or affiliates. With ENCORE's stock price influenced by the false Former

13  Officer Section, Defendant TRIARC was able to sell shares of its ENCORE stock at a desired

14  price and obtain other material financial benefits. Furthermore, MOSER believes that Defendant

15  TRIARC's interference with MOSER's contract with ENCORE also enabled Defendant TRIARC

16  to be relieved of several millions of dollars of guarantees of ENCORE debt and to financially

17  benefit by ENCORE not paying amounts properly owing to MOSER pursuant to the MOSER'S

18  employment contract with ENCORE.

19       29.     On information and belief, MOSER alleges Defendant TRIARC engaged in the

20  foregoing acts, and other wrongful acts, as part of a conspiracy. As such, on information and

21  belief, MOSER alleges Defendant TRIARC and/or other individuals and entities who were not

22  released by the Settlement, and others, agreed and conspired to tortiously interfere with

23  MOSER's contractual relations with ENCORE, and inflict emotional distress upon MOSER.

24       30.     On information and belief, MOSER alleges that commencing in the spring of 2001

25  and continuing at least through the present date, Defendant TRIARC and/or one or more of the

26  co-conspirators, in furtherance of the civil conspiracy: (i) directed or caused ENCORE to take

27  numerous actions to deny MOSER the benefits of MOSER's contractual relationships with

28

**FIRST AMENDED COMPLAINT**

109568.000001/578172.03                        CASE NO.: 05 CV 1742 B (POR)

1   ENCORE, including MOSER's employment contract and the Settlement; and (ii) controlled

2   material actions of ENCORE related to MOSER.

3        31.    On information and belief, MOSER alleges that throughout the period from spring

4   2001 and continuing through the present date, Defendant TRIARC and/or one or more of the

5   other co-conspirators took numerous actions in furtherance of the conspiracy.  In particular, and

6   without limitation, Defendant TRIARC: (i) selected or participated in the selection of TRIARC's

7   Law Firm that conducted the "white wash" investigation; (ii) instructed or participated in the

8   instruction to TRIARC's Law Firm regarding the scope of its investigation which was contrary to

9   the stated scope in the Former Officer Section; (iii) directed and/or controlled material aspects of

10  the investigation and consulted with the Firm and the Audit Committee throughout the

11  investigation; (iv) received material facts from MOSER regarding the Factual Matters Raised and

12  then withheld or failed to accurately convey the material facts to ENCORE, TRIARC's Law

13  Firm, and others; (v) reviewed, revised and/or commented on the numerous public filings of

14  ENCORE regarding MOSER's employment, ENCORE's termination of MOSER's employment

15  without cause, and the resolution of MOSER's employment, evidenced by the Settlement; (vi)

16  commented and assisted in directing the negotiation of the Settlement; (vii) participated in and/or

17  directed the registration, offering and/or sale of the shares of ENCORE by ENCORE, TRIARC,

18  and others; (viii) participated in advising, directing, and controlling, ENCORE and its counsel

19  regarding MOSER's employment and related matters designed and intended to deny and/or

20  reduce the benefits of MOSER under his contractual relationships with ENCORE; and (ix) at all

21  material times directed and/or controlled ENCORE's acts against MOSER including without

22  limitation the publication of the defamatory statements, the breach of the Settlement, and breach

23  of MOSER's employment contract.

24       32.    On information and belief, MOSER alleges Defendant TRIARC and/or others

25  took actions in furtherance of the conspiracy on its own behalf and as the agent of and on behalf

26  of certain co-conspirators.  Each of the foregoing acts and the other acts in furtherance of the civil

27  conspiracy were for the personal profit of Defendant TRIARC and/or the other co-conspirators

28  and to the determent and injury to MOSER.

**FIRST AMENDED COMPLAINT**

109568.000001/578172.03                                          CASE NO.: 05 CV 1742 B (POR)

33.     On information and belief, MOSER alleges Defendant TRIARC engaged in the foregoing acts, and other wrongful acts, as part of an effort to aid and abet the wrongful conduct of others, including ENCORE, itself, certain officers, directors, and affiliates of TRIAC, and various individual officers and directors of ENCORE.  As such, on information and belief, MOSER alleges Defendant TRIARC agreed to and intentionally aided and abetted others in tortiously interfering with MOSER's contractual relations with ENCORE, and inflicting emotional distress upon MOSER.

34.     On information and belief, MOSER alleges that commencing in the spring of 2001 and continuing at least through the present date, Defendant TRIARC, in furtherance of its efforts to aid and abet the tortious conduct of others: (i) directed or caused ENCORE to take numerous actions to deny MOSER the benefits of MOSER's contractual relationships with ENCORE, including MOSER's employment contract and the Settlement; and (ii) controlled material actions of ENCORE related to MOSER.

35.     On information and belief, MOSER alleges that throughout the period from spring 2001 and continuing through the present date, Defendant TRIARC, in furtherance of its efforts to aid and abet the tortious conduct of others, took numerous actions to give substantial assistance to others in accomplishing tortious harm to MOSER.   In particular, and without limitation, Defendant TRIARC: (i) selected or participated in the selection of TRIARC's Law Firm that conducted the "white wash" investigation; (ii) instructed or participated in the instruction to TRIARC's Law Firm regarding the scope of its investigation which was contrary to the stated scope in the Former Officer Section; (iii) directed and/or controlled material aspects of the investigation and consulted with the Firm and the Audit Committee throughout the investigation; (iv) received material facts from MOSER regarding the Factual Matters Raised and then withheld or failed to accurately convey the material facts to ENCORE, TRIARC's Law Firm and others; (v) reviewed, revised and/or commented on the numerous public filings of ENCORE regarding MOSER's employment, ENCORE's termination of MOSER's employment without cause, and the resolution of MOSER's employment, evidenced by the Settlement; (vi) commented and assisted in directing the negotiation of the Settlement; (vii) participated in and/or directed the

9<br>**FIRST AMENDED COMPLAINT**

1  registration, offering, or sale of the shares of ENCORE; ENCORE, TRIARC, TRIARC's

2  officers and directors, and others; (viii) participated in advising, directing, and controlling,

3  ENCORE and its counsel regarding MOSER's employment and related matters designed and

4  intended to deny and/or reduce the benefits of MOSER under his contractual relationships with

5  ENCORE; and (ix) at all material times directed and/or controlled ENCORE's acts against

6  MOSER including without limitation the publication of the defamatory statements, the breach of

7  the Settlement, and breach of MOSER's employment contract.

8      36.    On information and belief, MOSER alleges Defendant TRIARC and/or others

9  took actions knowing the conduct of ENCORE and/or other individual officers and directors of

10  ENCORE, as described herein, constituted a breach of duty to MOSER.  On information and

11  belief, MOSER further alleges Defendant TRIARC's actions, as described herein, provided

12  ENCORE and/or officers and directors of ENCORE with substantial assistance and

13  encouragement to engage in the wrongful conduct described herein.

14      37.    On information and belief, MOSER alleges Defendant TRIARC gave substantial

15  assistance to ENCORE and/or other individual officers and directors of ENCORE to accomplish

16  various tortious results, including without limitation, the intentional interference with MOSER's

17  contractual relations with ENCORE, and the intentional infliction of emotional distress upon

18  MOSER.  On information and belief, MOSER alleges such conduct on the part of Defendant

19  TRIARC constitutes a breach of duty.   Each of the foregoing acts and the other acts in

20  furtherance of Defendant TRIARC's efforts to aid and abet the wrongful conduct of others were

21  for the personal profit of Defendant TRIARC and to the determent and injury to MOSER.

22                    **FIRST CLAIM FOR RELIEF**

23                    **(Intentional Interference with Contract)**

24      38.    MOSER realleges and incorporates by this reference each and every allegation

25  contained in paragraphs 1 through 37 of this First Amended Complaint as if fully set forth.

26      39.    The actions of Defendant TRIARC as alleged herein constitute intentional

27  interference with MOSER's contractual relations, either directly or as part of a conspiracy with

28

109568.000001/578172.03                                    CASE NO.: 05 CV 1742 B (POR)

1    others to intentionally interfere with MOSER's contractual relations or by way of aiding and

2    abetting others in the intentional interference with MOSER's contractual relations.

3        40.    On information and belief, MOSER alleges Defendant TRIARC knew of the

4    agreements and contracts existing between MOSER and ENCORE.  Defendant TRIARC has

5    intentionally and willfully interfered, and attempted to interfere, with the economic relationship

6    formed between MOSER and ENCORE.

7        41.    On information and belief, Defendant TRIARC controlled, actively participated

8    and/or directed ENCORE's publication of a false Form S-1, S-1A, S-3, and S-3A's, which: (i)

9    incorrectly claim MOSER was in error regarding the Factual Matters Raised, which – in reality –

10   were correctly identified by him; (ii) falsely assert that MOSER pointed to "no facts" regarding

11   the Factual Matters Raised; (iii) make the completely false and malicious, assertion that MOSER

12   was "placed on administrative leave;" and (iv) falsely assert MOSER was terminated by

13   ENCORE for cause.  On information and belief, MOSER alleges Defendant TRIARC

14   purposefully and knowingly committed such acts designed to disrupt the Settlement contract for

15   Defendant TRIARC's personal profit, and the personal profit of certain officers, subsidiaries and

16   affiliates of Defendant TRIARC.  Indeed, such acts prevented ENCORE from fulfilling its

17   contractual obligations to MOSER.

18       42.    On information and belief, it was not until Defendant TRIARC desired to sell

19   common shares of ENCORE stock and be relieved of certain guaranties that Defendant TRIARC

20   knowingly and intentionally caused ENCORE to breach the Settlement agreement.

21       43.    As a proximate result of Defendant TRIARC's conduct, MOSER has suffered

22   harm, including loss of a significant bargained-for provision of the Settlement, and other

23   financial benefits, in an amount to be proven at time of trial, with interest thereon at the legal

24   rate.

25       44.    The aforementioned acts of Defendant TRIARC were willful, oppressive and

26   malicious.  MOSER is therefore entitled to punitive damages in a total amount to be established

27   by proof at trial.

28

45.     On information and belief, MOSER alleges Defendant TRIARC's continued direction and control of ENCORE's public mischaracterization of MOSER, and other acts of interference, will cause great and irreparable injury to MOSER unless enjoined and restrained by order of the Court.  MOSER has no adequate remedy at law for the injuries currently being suffered, and injunctive relief is an appropriate remedy.

## SECOND CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

46.     MOSER realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 54 of this First Amended Complaint as if fully set forth.

47.     The actions of Defendant TRIARC, its co-conspirators, and/or those it aids and abets, as alleged herein constitute intentional infliction of emotional distress, conspiracy to inflict emotional distress, and/or aiding and abetting in the infliction of emotional distress, in violation of California law.

48.     The aforementioned conduct of Defendant TRIARC, its co-conspirators, and/or those it aids and abets including, but not limited to: (i) discussing and disclosing the terms and circumstances of MOSER's employment and the Settlement in a false and misleading manner, which served no lawful or necessary purpose; (ii) failing to state that MOSER was terminated without cause; (iii) publishing the false statement that MOSER was terminated from his employment with ENCORE for cause, when ENCORE specifically agreed in the SETTLEMENT that MOSER was not terminated for cause; (iv) failing to refrain from "any act that would be inconsistent with the purpose of the [Settlement]" by publishing false and defamatory statements regarding MOSER, and the circumstances regarding his employment which led to the Settlement; and (v) failing to state only that all issues between the parties "have been resolved," is outrageous.

49.     Defendant TRIARC's conduct was intentional and malicious and done for the purpose of causing MOSER to suffer humiliation, mental anguish, and emotional and physical distress. Defendant TRIARC's conduct was done with knowledge that MOSER's emotional and

12

**FIRST AMENDED COMPLAINT**

1  physical distress wo⬤ ereby increase, and was done w⬤ wanton and reckless disregard of

2  the consequences to MOSER.

3       50.    As the proximate result of the acts alleged above, MOSER suffered humiliation,

4  mental anguish, and emotional and physical distress, and has been injured in mind and body

5  including, without limitation: inability to sleep, inability to concentrate, physical and mental

6  exhaustion, restlessness, distractions, anxiety and public embarrassment.

7       51.    By reason of the acts alleged above, MOSER was prevented from attending to his

8  usual profession of engaging in the practice of law in the normal fashion, and thereby lost

9  earnings.

10       52.    The aforementioned acts of Defendant TRIARC were willful, oppressive, and

11  malicious.  MOSER is therefore entitled to punitive damages in a total amount to be established

12  by proof at trial.

13       53.    On information and belief, MOSER alleges the public mischaracterization and

14  defamation of him, and other wrongful acts by Defendant TRIARC, its co-conspirators, and/or

15  those it aids and abets, will cause great and irreparable injury to MOSER unless enjoined and

16  restrained by order of the Court.  MOSER has no adequate remedy at law for the injuries

17  currently being suffered, and injunctive relief, including but not limited to the Court ordering

18  Defendant TRIARC, its co-conspirators, and/or those it aids and abets to specifically issue, file,

19  and/or publish its own statement of retraction or correction, in the same manner and with the

20  same scope of dissemination as the publication of the false statements, is an appropriate remedy.

21       WHEREFORE, Plaintiff TIMOTHY W. MOSER prays for relief against Defendant

22  TRIARC COMPANIES, INC. as follows:

23       1.    For a preliminary and permanent injunction restraining and enjoining Defendant

24  TRIARC, and its agents, servants, employees, and all others in active concert or participation

25  with it, from further causing ENCORE to violate any of its duties and obligations under the

26  Settlement, including engaging in any disparagement, defamation, or the making false and/or

27  misleading representations of, or related to, MOSER, as alleged herein;

28

     

1      2.    For the Court to order Defendant TRIARC to specifically issue, file, and/or

2  publish its own statement of retraction or correction, in the same manner and with the same scope

3  of dissemination as the publication of the false statements;

4      3.    For an award of damages suffered by MOSER as a result of conduct of Defendant

5  TRIARC, as alleged herein, in an amount to be proven at time of trial, plus interest;

6      4.    For an award of punitive and exemplary damages in an amount to be proven at

7  trial sufficient to punish and deter Defendant TRIARC;

8      6.    For an award of attorneys' fees;

9      7.    For costs of suit incurred herein; and

10     8.    As for such other and further relief as the court may deem just and proper.

11  DATED: January 6, 2006         PROCOPIO, CORY, HARGREAVES &
                                      SAVITCH LLP

13                              By:

14                                Anthony J. Dain
                                Frederick K. Taylor

15                                Frederic G. Ludwig, III
                                Attorneys for Plaintiff,
                                TIMOTHY W. MOSER

17                     **DEMAND FOR JURY TRIAL**

18      Plaintiff TIMOTHY W. MOSER respectfully requests a jury trial.

19  DATED: January 6, 2006         PROCOPIO, CORY, HARGREAVES &
                                        SAVITCH LLP

21                              By:

22                                Anthony J. Dain
                                Frederick K. Taylor

23                                Frederic G. Ludwig, III
                                Attorneys for Plaintiff,

24                                TIMOTHY W. MOSER

25

26

27

28

**FIRST AMENDED COMPLAINT**

109568.000001/578172.03                                      CASE NO.: 05 CV 1742 B (POR)

Summons in a Civil Action (Rev 11/97)

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

TIMOTHY W. MOSER

vs.

ENCORE CAPITAL GROUP, INC.; JEFFERIES &
COMPANY, INC.; BREAN MURRAY & CO., INC.;
ROTH CAPITAL PARTNERS, L.L.C.; CARL C.
GREGORY, III; BARRY BARKLEY; BRANDON
BLACK; ROBERT M. WHYTE; ALEXANDER
LEMOND; ERIC D. KOGAN and BRIAN SCHORR

**SUMMONS IN A CIVIL ACTION**

Case No. _____

'04 CV 2085   LAB (WMc)

TO: (Name and Address of Defendant)

Encore Capital Group, Inc.

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and
serve upon PLAINTIFF'S ATTORNEY

Anthony J. Dain (Bar No. 98947)
Frederick K. Taylor (Bar No. 159838)
Frederic G. Ludwig, III (Bar No. 205332)
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100
San Diego, CA 92101

An answer to the complaint which is herewith served upon you, within TWENTY days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the complaint.

_____
W. Samuel Hamrick, Jr.

CLERK

J. B. DACHLER

By _____ ; Deputy Clerk

_____
10-18-04
DATE

Summons in a Civil Action

2002 © American LegalNet, Inc.

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "Agreement") is
made by and between Encore Capital Group, Inc. and Midland Credit Management, Inc.
(individually and collectively referred to in this Agreement as "Encore") for itself and for and on
behalf of each Encore Party (as defined in Section 2.1); and Timothy W. Moser (referred to in
this Agreement as "Mr. Moser") for himself and for and on behalf of each Moser Party (as
defined in Section 2.2). This Agreement shall be effective on June 21, 2002 (the "Effective
Date"). This Agreement is made with reference to the following facts:

### RECITALS

I.      Encore Capital Group, Inc. is a Delaware business corporation with its principal place of
        business in San Diego, California. Midland Credit Management, Inc. is a Kansas
        business corporation with its principal place of business in San Diego, California.

I.      On or about November 2000, Mr. Moser was employed by Encore as Executive Vice-
        President, General Counsel, and Secretary ("the Employment"). The Employment was
        terminated effective July 31, 2001.

I.      A dispute has arisen regarding Mr. Moser's entitlement to certain benefits accruing prior
        to and upon the termination of the Employment.

IV.     Encore and Mr. Moser desire to reach a full and final settlement of all matters between
        them and to avoid the expense and inconvenience of litigation regarding the
        Employment. Therefore, in consideration of their mutual promises, and the terms,
        conditions, provisions, and covenants of this Agreement, Encore and Mr. Moser

1

#199832v2
597622v1

(sometimes referred to individually as "a Party" and collectively as "the Parties") agree as follows:

## AGREEMENT

1.    Settlement Payment and Other Agreements.

    1.1    Monetary Consideration. On or before 9:00 a.m. California Time on July 1, 2002, Encore will absolutely, unconditionally and irrevocably pay via wire transfer $500,000 (the "Settlement Payment") to the Trust Account of Procopio Cory Hargreaves & Savitch in accordance with the following instructions:

> Account # 0011615994
> ABA Routing # 122000496
> Union Bank
> 1201 5th Ave
> San Diego, CA 92101
> Reference 109568/000001 AJD

The Settlement Payment when so fully and timely made will, except as provided in this Agreement and subject to the terms, conditions and covenants of this Agreement, be in full and complete satisfaction of all of Encore's obligations to Mr. Moser, including Encore's monetary obligations under this Agreement, based upon or arising out of the Employment, or otherwise. The obligations under this Section 1.1 are subject to the provisions of Section 2.4.

    1.1    Other Agreements.

        1.1.1   The terms of this Agreement are intended by the Parties to be confidential. The Parties; their respective agents, employees, and attorneys; Encore's officers or directors; all Moser Parties; all Encore Parties; Mr. Moser's spouse shall not disclose any information regarding the terms of this Agreement to any third party (including, but not limited to creditors, governmental agencies, vendors and competitors),

2

#199832v2
597622v1

other than stating that all issues between the Parties "have been resolved." Nothing in

this Agreement, however, shall preclude Encore from acting upon the advice of its legal

counsel and disclosing the fact or terms of this Agreement in reports of Encore filed with

the Securities and Exchange Commission. Nothing in this Agreement shall preclude Mr.

Moser or Encore (or Mr. Moser's spouse) from disclosing such information (i) to his, her

or its lawyers or accountants as may be reasonably necessary to enable the rendition of

professional services by such persons, (ii) as may be required by subpoena, court order or

any other governmental or administrative agency rule, regulation or process, or (iii) as

may be legally required to respond to any question under oath in any judicial or

administrative proceeding (including without limitation depositions or testimony at any

trial or proceeding (judicial, administrative or otherwise)), or (iv) as required to file his,

her or its tax returns.

   1.1.2 <u>Termination of the Employment</u>. The Parties agree that the

Employment was not terminated by Encore "for cause," notwithstanding any prior

statement by or on behalf of Encore to the contrary.

**2.** <u>**Mutual General Release**</u>.

  2.1 Excepting only (i) the obligations imposed by this Agreement, and (ii) any claims

that may arise out of the breach of this Agreement by Mr. Moser or any Moser Party, Encore for

itself and on behalf of its assigns, subsidiaries, predecessors and successors, and its current

officers, directors, or any of them (individually an "Encore Party," and collectively the "Encore

Parties") covenants not to sue or pursue any remedy, action or litigation (or file any charge or

otherwise correspond with any Federal, state or local administrative agency) or pursue any

remedy directly or indirectly against, and waives, releases and discharges Mr. Moser and the

3

Moser Parties (as defined in Section 2.2) from any and all claims, demands, rights, judgments,

defenses, actions, charges or causes of action whatsoever, of any and every kind and description,

whether known or unknown, that Encore or any Encore Party ever had, now has or shall or may

have or assert as of the Effective Date of this Agreement, specifically including (but not

exclusively and without limiting the generality of the foregoing) any and all claims, demands,

agreements, obligations and causes of action arising out of or in any way connected with any

transaction, occurrence, act or omission related to the Employment by Encore or any of its

subsidiaries; the termination of the Employment; any services of any type or nature previously

provided at any time to Encore or any Encore Party by Mr. Moser.  Encore and each Encore

Party further agrees that this Agreement may be pleaded as a full defense to any proceeding

covered by the terms of this Section 2.1, in any action or suit that is or may be initiated,

prosecuted or maintained by Encore or any Encore Party.

      2.2     Excepting only (i) the obligations imposed by this Agreement, and (ii) any claims

that may arise out of the breach of this Agreement by Encore or any Encore Party, upon payment

of the Settlement Payment pursuant to Section 1.1, Mr. Moser for himself and on behalf of

anyone who makes a claim based on rights derived through Mr. Moser  (including, without

limitation, if applicable, his past, present and future spouse and descendents and his heirs,

beneficiaries, executors and administrators and permitted assigns, employees, representatives,

agents and attorneys) (individually a "Moser Party," and collectively, the "Moser Parties")

covenants not to sue or pursue any litigation (or file any charge or otherwise correspond with any

Federal, state or local administrative agency) against, and waives, releases and discharges each

of the Encore Parties from any and all claims, demands, rights, judgments, defenses, actions,

charges or causes of action whatsoever, of any and every kind and description, whether known or

4

unknown, that Mr. Moser ever had, now has or shall or may have or assert as of the Effective Date of this Agreement against any of them, specifically including (but not exclusively and without limiting the generality of the foregoing) any claims, demands, rights, judgments, defenses, actions, charges or causes of action related to employment or termination of employment or that arise out of or relate in any way to the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, as amended, and other Federal, state and local laws relating to discrimination on the basis of age, sex or other protected class, all claims under Federal, state or local laws for express or implied breach of contract, wrongful discharge, defamation, intentional infliction of emotional distress, and any related claims for attorneys' fees and costs; provided, however, that nothing in this Agreement shall release Encore or any of their subsidiaries from any obligations to indemnify Mr. Moser under any corporate articles, charter or by-laws. Mr. Moser further agrees that this Agreement may be pleaded as a full defense to any proceeding covered by the terms of this Section 2.2, in any action or suit that is or may be initiated, prosecuted or maintained by Mr. Moser or any Moser Party. Notwithstanding the foregoing, Mr. Moser understands and confirms that he is executing this Agreement voluntarily and knowingly, and this Agreement shall not affect Mr. Moser's right to claim otherwise under ADEA. In addition, Mr. Moser shall not be precluded by this Agreement from filing an employment-related charge with any relevant Federal, state or local administrative agency, but Mr. Moser agrees not to participate in, and agrees to waive his rights with respect to any monetary or other financial relief arising from any such administrative proceeding.

2.3    In furtherance of their respective agreements set forth above, each of Mr. Moser (for himself and on behalf of each Moser Party) and Encore (for itself and on behalf of each

5

#199832v2
597622v1

Encore Party) hereby expressly waives and relinquishes any and all rights under any applicable statute, doctrine or principle of law restricting the right of any person to release claims that such person does not know or suspect to exist at the time of executing a release, which claims, if known, may have materially affected such person's decision to give such a release.  In connection with such waiver and relinquishment, each of Mr. Moser (for himself and on behalf of each Moser Party) and Encore (for itself and on behalf of each Encore Party) acknowledges that he or it is aware that he or it may discover claims presently unknown or unsuspected, or facts in addition to or different from those he or it now knows or believes to be true with respect to the matters released by this Agreement.  Nevertheless, it is the intention of each of Mr. Moser (for himself and on behalf of each Moser Party) and Encore (for itself and on behalf of each Encore Party) to fully, finally and forever release all such matters, and all claims relative thereto which now exist, may exist or have existed, as specifically provided in this Agreement.  Mr. Moser, Encore and the Encore Parties acknowledge and agree that this waiver shall be an essential and material term of the release contained in this Agreement.  In addition, and not by way of limitation to the foregoing, each of Mr. Moser (for himself and each Moser Party), and Encore (for itself and on behalf of each Encore Party) acknowledges that he or it has had the benefit of independent legal advice with respect to the advisability of entering into this Agreement and each fully understands and knowingly and expressly waives his or its respective rights and benefits under Section 1542 of the California Civil Code or under any similar provision of law.  Section 1542 of the California Civil Code states that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
> MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
> DEBTOR.

6

2.4     Mr. Moser acknowledges that he has been offered a period of time of at least 21 days to consider whether to sign this Agreement, which he has waived, and Encore agrees that Mr. Moser may cancel this Agreement at any time during the seven days following the date on which this Agreement has been signed by all parties to this Agreement. In order to cancel or revoke this Agreement, Mr. Moser must deliver to the General Counsel of Encore written notice stating that Mr. Moser is canceling or revoking this Agreement. If this Agreement is timely cancelled or revoked, none of the provisions of this Agreement shall be effective or enforceable and none of the Parties shall have any obligation or liability under this Agreement.

**3.     Attorneys' Fees and Costs.**

The Parties shall be responsible for their own court costs, attorneys' fees, expenses and other sums which have been expended or incurred in conjunction with the matters referenced in this Agreement.

**4.     Representations And Warranties Of The Parties.**

4.1     Except as expressly stated in this Agreement, no Party (nor any officer, agent, employee, representative or attorney) has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and no Party is relying upon any statement, representation or promise of any other Party (or any officer, agent, employee, representative or attorney) in executing this Agreement, or in making this Settlement, except as is expressly stated in this Agreement.

4.2     Each Party represents and declares that in executing this Agreement such Party has relied solely upon his or its own judgment, belief and knowledge, after he or it has obtained the advice of such Party's own independently-selected counsel, concerning the nature, extent, and duration of their rights and claims.

7

4.3     Each Party has made such investigation of the facts pertaining to this settlement and this Agreement, and of all the matters pertaining to it, as it deems necessary.

4.4     Each Party has read this Agreement and understands its contents and consequences.

4.5     Each Party assumes the risk of any misrepresentation, concealment or mistake. If any Party should subsequently discover that any fact relied upon by it in entering into this Agreement was untrue, or that any fact was concealed from it, or that any understanding of the facts or of the law was incorrect, such Party shall not be entitled to any relief, including, without limitation on the generality of the foregoing, any alleged right or claim to set aside or rescind this Agreement.

4.6     Neither Encore, any Encore Party, Mr. Moser nor any Moser Party has assigned, transferred or conveyed any of the claims, demands or causes of action that are to be settled and resolved by this Agreement.

4.7     Each term of this Agreement is contractual and not merely a recital.

5.      **Representations and Warranties of Encore.**

Encore represents and warrants to Mr. Moser the following, that as of the Effective Date and the date that the Settlement Payment is made:

(i)     Encore Capital Group, Inc. and Midland Credit Management, Inc. are corporations, duly organized, validly existing and in good standing under the laws of their respective states of incorporation. Each has the full corporate right, power and authority to execute and deliver this Agreement and to satisfy and perform pursuant to the provisions contained in this Agreement. Neither Encore Capital Group, Inc. nor Midland Credit Management, Inc will be insolvent after the payment of the Settlement Payment.

8

(ii)   The execution, delivery and performance pursuant to this Agreement has been properly and specifically authorized by all requisite corporate and legal action of Encore including, without limitation, board of directors.

(iii)   This Agreement constitutes the valid and legally binding obligation of Encore, Encore's subsidiaries, and Encore's current officers and directors, and this Agreement is enforceable against Encore and these specific Encore Parties according to the terms of this Agreement.

6.   Counterparts.

This Agreement may be executed in counterparts, all of which, when taken together, shall constitute a fully-executed original. Facsimile signatures will be effective and binding against the party sending their signature via facsimile. The Party providing a facsimile signature shall promptly provide an original signature to each other Party.

7.   Entire Agreement.

This Agreement constitutes the final and exclusive agreement between the Parties with respect to the subject matter hereof, and all prior and contemporaneous agreements, representations, negotiations and understandings of the Parties regarding same, whether oral or written, are superseded and merged into this Agreement.

8.   Cooperation.

Each Party agrees to cooperate with the other Party and to perform the further acts required by this Agreement, to execute and deliver any and all further documents that may be reasonably necessary or desirable to effectuate the purposes of this Agreement and to refrain or forbear from any act that would be inconsistent with the purposes of this Agreement. Mr. Moser further agrees to cooperate with and upon request, will make himself reasonably available to

9

Encore and its counsel, at Encore's expense, for the purpose of assisting in the completion or resolution of matters relating to or based upon events that occurred prior to or during the period of the Employment, including, without limitation, being available to testify at depositions or be a witness at trial, to prepare for testimony, to review or produce documents, transcripts, records and reports and perform any and all related matters. Mr. Moser shall be compensated by Encore at the rate of $400 per hour for the time he expends at Encore's request; Encore will estimate the time to be expended by Mr. Moser at Encore's request, will pay that estimated amount at the conclusion of the task to be performed, and promptly will pay any remaining amount due after completion of the task. The Parties agree that Mr. Moser's cooperation under this Paragraph 8 will not create an attorney-client relationship or constitute legal advice.

9.   **Modification**.

No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the Parties.

10.   **Construction**.

This Agreement was not drafted by any one party and shall not be construed or interpreted against any one party.

11.   **Severability**.

If any provision or other portion of this Agreement shall become illegal, null or void or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void or against public policy, then the remainder of this Agreement shall not be affected and shall remain in force and effect to the fullest extent permissible by law.

10

#199832v2
597622v1

12.    No Admission of Liability.

This Agreement represents a compromise disposition of controverted claims, and by executing this Agreement, the Parties do not admit liability for any of the matters discussed in the course of negotiating this Agreement.  Except as specified as otherwise in this Agreement, no statements made in this Agreement may be used against any party for any purpose, and no statements of the Parties (or their officers, agents, employees, representatives or attorneys) in the course of negotiating this Agreement may be admissible as evidence for any purpose in any proceeding.

13.    Successors and Assigns.

Each and all covenants and conditions of this Agreement shall inure to the benefit of, and shall be binding upon successors in interests, assigns and legal representatives of Encore, the Encore Parties, Mr. Moser and the Moser Parties.

14.    Governing Law.

The Parties agree that this Agreement shall be governed by, construed and enforced in accordance with the laws of California.

15.    Authorization to Bind.

The Parties warrant that their respective signatories have full authority to enter into this Agreement on behalf of any entities for whom they are signing (and upon whose behalf such Party is signing).

[Signatures on next page]

11

#199833v2
597622v1

IN WITNESS OF THE FOREGOING, the Parties have executed this Agreement as of the

dates listed below.

DATED: June __, 2002                    ENCORE  CAPITAL  GROUP,  INC.  a
                                        Delaware corporation


                                        By: _____.


                                        By: _____


DATED: June __, 2002                    MIDLAND   CREDIT   MANAGEMENT,
                                        INC., a Kansas corporation


                                        By: _____


                                        By: _____


DATED: June 21, 2002                    _____
                                        Timothy W. Moser

IN WITNESS OF THE FOREGOING, the Parties have executed this Agreement as of the

dates listed below.

DATED: June 21, 2002                    ENCORE CAPITAL GROUP, INC, a
                                        Delaware corporation

                                        By: _____

                                        By: _____


DATED: June 21, 2002                    MIDLAND CREDIT MANAGEMENT,
                                        INC., a Kansas corporation

                                        By: _____

                                        By: _____


DATED: June __, 2002                    _____
                                        Timothy W. Moser


12

#1998832v2
597622v1

APPROVED AS TO FORM:

DATED: June **, 2002

BAKER & McKENZIE

By: _____
Charles H. Dick, Jr.
Attorneys for Encore

DATED: June 21, 2002

PROCOPIO CORY HARGREAVES & SAVITCH

By: _____
Anthony J. Dain
Attorneys for Timothy W. Moser

13

#199832v2
597622v1

1

## PROOF OF SERVICE

2

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is PROCOPIO, CORY, HARGREAVES & SAVITCH LLP, 530 "B" Street, Suite 2100, San Diego, California 92101. On January 6, 2006, I served the within documents:

3

4

PLAINTIFF TIMOTHY W. MOSER'S COMPLAINT AND FIRST AMENDED COMPLAINT FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

5

6

7

☐ by transmitting via facsimile number (619) 235-0398 the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. A copy of the transmission confirmation report is attached hereto.

8

9

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

10

11

12

13

☐ by placing the document(s) listed above in a sealed overnight envelope and depositing it for overnight delivery at San Diego, California, addressed as set forth below. I am readily familiar with the practice of this firm for collection and processing of correspondence for processing by overnight mail. Pursuant to this practice, correspondence would be deposited in the overnight box located at 530 "B" Street, San Diego, California 92101 in the ordinary course of business on the date of this declaration.

14

15

16

17

☒ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

18

SEE ATTACHED SERVICE LIST

19

☐ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

☒ *(Federal)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

22

Executed on January 6, 2006, at San Diego, California.

23

Fua Akeli

24

25

26

27

28

-1-

## SERVICE LIST

| | |
|---|---|
| Corporation Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br>Telephone: (302) 636-5401<br>Fax: (302) 636-5454 | Agent of Service for TRIARC COMPANIES,<br>INC. – *VIA PERSONAL SERVICE* |
| Raymond J. Coughlan, Jr., Esq.<br>Earl M. Pott, Esq.<br>COUGHLAN SEMMER & LIPMAN, LLP<br>501 West Broadway, Suite 400<br>San Diego, CA 92101<br>Telephone: (619) 232-0800<br>Fax: (619) 232-0107 | Courtesy copy - *VIA U.S. MAIL* |
| Terry W. Bird, Esq.<br>Jason D. Kogan, Esq.<br>Sharon Ben-Shahar, Esq.<br>BIRD MARELLA BOXER WOLPERT<br>NESSIM DROOKS & LINCENBERG, APC<br>1875 Century Park East, 23rd Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 201-2100<br>Fax: (310) 201-2110 | Courtesy copy - *VIA U.S. MAIL* |

-2-