# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY W. MOSER, an individual,<br><br>         Plaintiff,<br> vs.<br><br>TRIARC COMPANY, INC., a Delaware corporation,<br><br>         Defendant. | CASE NO. 05cv1742-LAB (WMc)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Dkt. no. 12.] |

On September 7, 2005, Plaintiff filed his original complaint. On January 16, 2006, Plaintiff filed his amended complaint ("FAC"). Defendant Triarc Company, Inc. ("Triarc") filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which Plaintiff opposed. Defendant bases its motion on two arguments: 1) the statute of limitations bars Plaintiff's claims against Triarc, and 2) Plaintiff's claim is not brought under any cognizable legal theory because Triarc, as a shareholder in Encore Capital Group, Inc. ("Encore"), it was not liable for Encore's torts.

**I. Plaintiff's Allegations**

   Triarc is a shareholder of Encore. Plaintiff alleges he was employed by Encore as its executive vice president, secretary, and general counsel. He alleges he discovered certain serious financial and accounting issues and brought them to the attention of Encore's board of directors. As a result, he contends, Encore retaliated by improperly dismissing him. (FAC, ¶ 15.) He alleges he entered into a settlement agreement with Encore in June, 2002. (*Id.*, ¶ 17.) He alleges Triarc, in order to sell its

shares of Encore at a favorable price, entered into a conspiracy to interfere with his contractual relations with Encore and to intentionally cause him emotional distress by publishing defamatory material about him. (*Id.*, ¶¶ 28–29, 42.) His argument is that Encore breached its settlement agreement by repeatedly making public statements regarding the circumstances of his leaving employment at Encore. He alleges Triarc and its co-conspirators engaged in certain overt acts in furtherance of the conspiracy from the spring of 2001 through the time of filing. (*Id.*, ¶¶ 30, 31, 34–35.)

## II.   Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Navarro*, 250 F.3d at 732.

In ruling on a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party, drawing all reasonable inferences from the allegations in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, the Court does not accept unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.") A complaint may also be dismissed under Rule 12(b)(6) if, accepting as true the allegations in the complaint, the running of the statute is apparent on the face of the complaint. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)) (further citations omitted).

If a motion to dismiss is granted, the court may grant leave to amend. Leave should be granted unless "the pleading could not possibly be cured by the allegation of other facts" and if it appears "at

all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

Because this Court is sitting in diversity, it applies California state law on substantive matters, including statutes of limitations and the tolling of statutes of limitations, under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949).

### III. Discussion

#### A. Statute of Limitations

Defendant relies on a statute of limitations argument to defeat Plaintiff's claims for interference with contractual relations and for intentional infliction of emotional distress. California's limitations period for claims for interference with contractual relations and for intentional infliction of emotional distress are subject to a two-year limitations period. Cal. Code Civ. Proc. §§ 335.1, 339. Causes of action for interference with contractual relations, even if based on allegations of defamation, are subject to a two-year limitations period. *Knoell v. Petrovich*, 76 Cal.App.4th 164, 168 (Cal.App. 2 Dist. 1999). In this case, it is clear the publication of the first allegedly defamatory document, a form S-1 filed with the SEC, took place on September 2, 2003, slightly more than two years before Plaintiff filed suit.

Plaintiff opposes the statute of limitations argument on two grounds. First, he argues later republications of the same defamatory statements give rise to additional non-time-barred claims. Second, he contends harm flowing from the alleged civil conspiracy is not subject to the same limitations period.

##### 1. Republications

Plaintiff has alleged Defendant filed several different defamatory statements with the SEC, of which the filing on September 2, 2003 was only the first. (FAC, ¶¶ 20–26.) Ordinarily accrual of a cause of action for wrongfully inducing a breach of contract accrues on the date of the wrongful act. *Trembath v. Digardi*, 43 Cal.App.3d 834, 836 (Cal.App. 1 Dist. 1974). Here, however, Plaintiff has alleged multiple breaches in the form of multiple republications of the same defamatory material, in several different forms filed with the SEC — a S-1, S-1A, S-3, and several S-3A's. (Opp'n at 8:4–8;

FAC ¶¶ 25, 41.) While Plaintiff is not making a claim for defamation, he is alleging breaches of contract in the form of defamatory statements.

Defendant has not directly addressed the issue of whether inducing additional breaches of the settlement agreement following the initial alleged breach can give rise to additional causes of action, with new accrual periods. Rather, Defendant treats Plaintiff's causes of action as accruing simultaneously, when the first breach allegedly occurred, contending "plaintiff's cause of action for intentional interference with contractual relations accrued no later than . . . the date the allegedly statements were first published by Encore . . . ." (Memo of P & A in Supp. of Mot. to Dismiss ("Memo"), at 5:1–3) (emphasis added). However, the authorities cited by Defendant merely support the proposition that a cause of action for interference with contractual relations accrues when the wrong is done. This is helpful to them with regard to the first breach on September 2, 2003, but not necessarily with regard to later breaches. Even if Plaintiff's settlement agreement was first breached on September 2, 2003, there is no showing he was not entitled to continue to rely on it. *See Baugh v. Garl*, 137 Cal.App.4th 737, 747 (Cal.App. 2 Dist. 2006) (holding that, because settlement agreement did not expire, Plaintiffs were still entitled to rely on it even after the first breach, and the statute of limitations did not begin to run as long as they elected to rely on the agreement).

In response to Plaintiff's argument that "subsequent, and multiple republications of the defamatory statements create distinct interference claims, with separate accruals," (Opp'n at 6:21–22), Defendant cites the "single publication rule," under which, "with respect to the statute of limitations, publication generally is said to occur on the first general distribution of the publication to the public." *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal.App.4th 392, 401 (13 Cal.App. 4 Dist. 2004) (citation and quotation marks omitted). This rule "was intended to reflect the common law single-publication rule." *Id.* It is codified at Cal. Civ. Code § 3425.3 and is known as the Uniform Single Publication Act.

Under this provision, "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy <u>or any other tort founded upon any single publication</u> or exhibition or utterance . . . ." § 3425.3. In California, interference with contractual relations sounds in tort. *Toscano v. Greene Music*, 124 Cal.App.4th 685, 694 (Cal.App. 4 Dist. 2004) (referring to

interference with employment contract as a tort). Under this rule, each edition — rather than each copy — of a publication is counted as a publication. *Traditional Cat Ass'n*, 118 Cal.App.4th at 401. Here, however, Plaintiff has alleged the same offending information was included in several different forms Encore filed with the SEC.

Defendant contends because the newly filed forms contained the same allegedly defamatory information and went to the "same narrow and established group of readers," they did not constitute new publications. (Reply at 3:2–12 (citing *Kanarek v. Bugliosi*, 108 Cal.App.3d 327, 332–33 (Cal.App 2 Dist. 1980).) *Kanarek*, however, does not stand for the principle that a republication must reach a substantially new audience or contain different statements in order to give rise to a new cause of action. Rather, the court explained that the rule

> was designed . . . to protect a publisher who prints numerous copies of libelous matter, which copies are then distributed over a substantial period of time. A new cause of action for libel does not arise each time a new reader purchases the material. The protection of the act is not extended, however, to situations where, knowing that matter is allegedly libelous, the defendant republishes.

*Id.* at 332. Under the single publication rule, each new form filed with the SEC is analogous to a new edition, rather than multiple copies of the same edition distributed over time. The fact that the allegedly defamatory information remained the same from one form to the next does not help Defendant because, as noted, knowingly republishing the same defamatory information gives rise to a new cause of action. *Id.* at 332 ("[T]he act was not designed to give unending immunity for repeated publications of libelous matter.") Therefore, this rule cannot render Plaintiff's claims time-barred, except with respect to the S-1 filed on September 2, 2003. That count of his claims could be time-barred (assuming no exception applies), although there is no showing on the face of the complaint that other claims based on later-filed forms are time-barred. *Huynh*, 465 F.3d at 996–97.

**2.     Civil Conspiracy**

Plaintiff contends because he has alleged Defendant engaged in a civil conspiracy to interfere with his contractual relations and to cause him emotional harm, the statute of limitations is tolled until the "last overt act" in furtherance of the conspiracy is committed. *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 786 (1979). Plaintiff contends the FAC "specifically alleges that Triarc engaged in a conspiracy with Encore to defame him." (Opp'n at 8:15–16 (citing FAC, ¶¶ 19, 29–32, 39, 47–48,

1  53).) The overt acts, he alleges, continued at least until the time he filed suit. (*Id.*, ¶¶ 30, 31, 34–35.)

2  Although Defendant raises this point at length, (Opp'n at 8:14–10:21), Defendant does not
3  specifically address this in its reply brief. Nor did Defendant anticipate and specifically address this
4  in its opening brief. Defendant does analyze its role as shareholder of Encore, contending "there is
5  no allegation in the [FAC] that Triarc was acting in any capacity other than in furtherance of its
6  interests as a shareholder of Encore." (Memo at 7:21–23.) Defendant also generally raises the breadth
7  and conclusory character of Plaintiff's allegations. (*See, e.g., id.* at 8:17–26.) Defendant further points
8  out seeming inconsistencies in the FAC regarding exactly what Defendant's role was. (Reply at
9  5:11–6:4 (pointing out possibly inconsistent statements regarding whether Defendant was a stranger
10 to the contract); *id.* at 6:12–26 (questioning what Defendant's alleged role was).)

11 The allegations can be read as contradictory if viewed critically. However, the Court is obliged
12 at this stage of the proceedings to view the allegations in the light most favorable to Plaintiff, and to
13 draw all reasonable inferences from the allegations in favor of Plaintiff. *Cahill*, 80 F.3d at 337–38.
14 A review of the FAC makes clear Plaintiff is alleging Defendant conspired with others to arrange for
15 Encore to file allegedly defamatory material with the SEC in order to be able to sell its shares of
16 Encore for a better price. (FAC, ¶¶ 19–20, 29–32, 35, 39, 47–48, 53.) Drawing inferences the Court
17 considers reasonable, Plaintiff is alleging Defendant entered into a conspiracy with others who owned
18 shares in Encore or had some connection with Encore, sometimes taking the lead and using its status
19 as shareholder to exert its influence. The alleged aim of this conspiracy was to minimize Encore's
20 exposure for accounting and financial irregularities by painting Plaintiff as biased and unreliable and
21 his expressed concerns as unfounded. (FAC at ¶ 28 ("With Encore's stock price influenced by
22 [defamatory statements in the SEC filings], Defendant Triarc was able to sell shares of its Encore stock
23 at a desired price and obtain other material financial benefits.") (capitals omitted).) Still drawing
24 reasonable inferences, the conspiracy continued to attempt to discredit Plaintiff and to bolster its
25 position. Defendant's suggestions to the contrary notwithstanding (Memo at 6:1–2 (interpreting FAC
26 ¶ 20 as claiming Triarc was a party to the settlement agreement)), it is clear Plaintiff is merely alleging
27 Defendant played a major role in Encore's decisions, not that Defendant was actually a party to
28 Encore's agreements. (*See* Opp'n at 11:6–12 (distinguishing between Plaintiff's claim for interference

with contractual relations, and breach of contract).)

In short, Defendant has not explained why, with regard to the alleged conspiracy, Plaintiff could "prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46. Because the Court finds Plaintiff has alleged the existence of a conspiracy whose overt acts continued well into the limitations period, the Court may not dismiss any of Plaintiff's claims as time-barred at this stage of the proceedings.

### B.   Defendant's Status as Shareholder

Defendant contends its status as a mere shareholder of Encore prevents it from being liable for Encore's actions. (Memo at 8:22–26.) Defendant contends its alleged wrongdoing must be "<u>independent</u> of [its] status with regard to the corporation." (*Id.* at 8:6.) In support of this, Defendant cites *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595 (1970). This case stands for the well-known principle that directors or officers of a corporation do not incur personal liability for a corporation's torts unless certain exceptions apply. Plaintiff, however, is expressly relying on the well-established exception that directors, officers, and shareholders can be held liable if "they participate in the wrong or authorize or direct that it be done." *Id.* Plaintiff has not argued Defendant is liable merely because of its status as shareholder, as Defendant asserts. (Memo at 7:19–23, 8:7–10, 25–26.) Rather, Plaintiff is arguing Defendant is liable because it participated in the wrong done to him.

Defendant appears to be arguing that its actions, taken in an attempt to further its interests as a shareholder, were therefore taken in Defendant's role as a shareholder. (Memo at 7:21–23; Reply at 6:7–10 (". . . Triarc's principal alleged motive for its various misdeeds is derived from its status as a shareholder, namely its desire to increase the value of its shares.")) This reasoning is flawed. Of course, it is in the interest of shareholders to obtain the highest price they can for their shares, when they decide to sell. However, in so doing, they are acting on their own private behalf. Furthermore,

/ / /
/ / /
/ / /
/ / /
/ / /

regardless of capacity as a shareholder, and regardless of whose behalf a shareholder might have been acting on, or the shareholder's motive, an intentional tortfeasor is still personally liable.

> All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered. This rule applies to intentional torts committed by shareholders and those acting in their official capacities as officers or directors of a corporation, even though the corporation is also liable.

*PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1381–82 (Cal.App. 2 Dist. 2000) (citing illustrative cases) (citations omitted). Thus, Defendant's status as a shareholder does not support its motion to dismiss.

## IV. Conclusion and Order

The Court holds the standard for dismissal under Fed. R. Civ. P. 12(b)(6) has not been met. For these reasons, Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.

DATED: March 29, 2007

*/s/ Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge