1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

TIMOTHY W. MOSER, an individual,

CASE NO. 05CV1742 JLS (WMc)

12

Plaintiff,

13

vs.

14
15

TRIARC COMPANIES, INC., a Delaware
corporation,

16
17

Defendant.

**ORDER (1) DENYING
DEFENDANT'S MOTION TO
STRIKE PURSUANT TO
CALIFORNIA CODE OF CIVIL
PROCEDURE § 425.16 AND (2)
DENYING AS MOOT
PLAINTIFF'S REQUEST FOR
JUDICIAL NOTICE**

(Doc. Nos. 25, 57)

18
19
20
21
22
23
24
25
26

On August 1, 2007, Triarc Companies, Inc. ("defendant") moved to strike both claims for relief in Timothy W. Moser's ("plaintiff") first amended complaint ("FAC"), pursuant to California Code of Civil Procedure § 425.16 ("anti-SLAPP"). (Doc. No. 25.) On November 2, 2007, plaintiff opposed defendant's motion to strike and filed a notice of lodgment. (Doc. Nos. 42 & 43.) On November 16, 2007, defendant replied to plaintiff's opposition and objected to the evidence supporting plaintiff's notice of lodgment.[1] (Doc. No. 49.) On May 16, 2008, plaintiff requested that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of documents which evidence correspondence between Encore Capital Group, Inc. ("Encore") and

27
28

---

[1] Plaintiff offered six documents to prove correspondence between Encore Capital Group, Inc. and the Securities and Exchange Commission. Defendant's reply argued that the documents constitute inadmissible hearsay.

1   the Securities and Exchange Commission ("SEC").  (Doc. No. 58.)  Defendant objected to

2   plaintiff's judicial notice request on May 29, 2008.  (Doc. No. 59.)  On June 12, 2008, plaintiff

3   replied to defendant's opposition.  (Doc. No. 61.)  For the reasons stated below, the Court

4   **DENIES** defendant's anti-SLAPP motion, and **DENIES AS MOOT** plaintiff's request for judicial

5   notice.

6                                                  **BACKGROUND**

7   **A.      Factual Background**

8              During the relevant period, defendant was allegedly a "major shareholder . . . own[ing] a

9   significant percentage of the outstanding shares" of Encore.  (FAC ¶ 9.)  Defendant "beneficially

10  owned or had voting and dispositive power over what is considered voting control of" Encore.

11  (*Id.*)

12             In November 2000, the Plaintiff began working for Encore as an executive vice-president,

13  general counsel, and secretary.  (FAC ¶ 10.)  Encore's business involves the purchase, sale, and

14  servicing of consumer debt.  (*Id.* ¶ 9.)  In the spring of 2001, plaintiff reported accounting

15  irregularities to Encore's board of directors and audit committee.  (*Id.* ¶¶ 11-13.)  Outside counsel

16  conducted an investigation into the alleged irregularities and found no evidence of wrongdoing by

17  Encore.  (*Id.* ¶ 23.)  Subsequently, Encore terminated plaintiff's employment on July 31, 2001.

18  (Settlement Agreement & Mutual Release ("Agreement"), Recital No. II, June 21, 2002.)

19             On June 21, 2002, Encore and plaintiff entered the Agreement to resolve plaintiff's

20  termination.  The Agreement included two clauses at issue in this case.  First, the Agreement

21  stated that Encore did not terminate plaintiff "for cause."  (FAC Ex. A, ¶ 1.1.2.)  Second, the

22  Agreement's confidentiality clause provided that the parties "shall not disclose any information

23  regarding the terms of this Agreement to any third party . . . other than stating that all issues

24  between the Parties 'have been resolved.'"  (*Id.* ¶ 1.1.1.)

25             In September 2003, Encore filed a Form S-1 with the SEC, as required by law.  See 15

26  U.S.C. § 77e.  The Form S-1 is a registration statement that must be filed prior to the sale of

27  securities.  (FAC ¶ 21.).  Encore filed the Form S-1 to "permit Encore and/or Triarc to sell shares

28  of Encore stock."  (Memo. ISO Motion, at 5.)  The Form S-1 contained a section titled "Settlement

with Former Officer" ("Officer Section") to summarize plaintiff's report of accounting

irregularities, the investigation by outside counsel, and the finding of no wrongdoing by Encore.

(Doc. No. 3 in 04cv2085, Exhibit B.)  In the Officer Section, Encore stated that Moser "questioned

the accuracy of its projections, liquidity position, adequacy of disclosure to the board of directors

and auditors, etc." (*Id.*)  The Officer Section explained that the outside counsel report had

concluded:

> [T]he former officer had not pointed to any facts that reflected a lack of integrity or
> competence in [Encore's] management or that led the law firm to conclude that
> [Encore's] 2000 Form 10-K contained any material misstatements or omissions.  The
> law firm also concluded that none of the issues raised by [Moser] required any new or
> amended public disclosure or other further action by [Encore's] audit committee.

(*Id.*)  Further, the report explained that plaintiff was placed on administrative leave and then

terminated.  (*Id.*)  Encore allegedly repeated these statements by incorporating them into

subsequent prospectuses and forms filed with the SEC.  (FAC ¶ 25.)  Plaintiff alleges Encore's

statement that he was placed on administrative leave is untrue and intentionally interfered with the

Agreement's terms by suggesting he was terminated for cause.  Additionally, plaintiff claims that

defendant intentionally inflicted emotional distress on plaintiff, causing public embarrassment that

prevented plaintiff from "engaging in the practice of law in the normal fashion".  (FAC ¶¶ 49-51.)

Defendant controlled Encore "at the time it directed Encore to file the first Form S-1, and

thereby breach the terms of the [Agreement]."[2]  (FAC ¶ 28.)  Defendant allegedly benefited from

the filing of the S-1 by obtaining a higher price for Encore's stock and being relieved of Encore's

debt.  (*Id.*)

**B.    Procedural Background**

On October 18, 2004, plaintiff filed a separate action against Encore and individual

defendants, alleging various causes of action in tort and contract.  (See Case No. 04cv2085.)  In

that case, the Hon. Larry A. Burns denied all of defendants' anti-SLAPP motions.  (Doc. Nos. 73,

156 in 04cv2085.)  Encore's appeal of the denial of these motions is currently pending before the

Ninth Circuit Court of Appeals.  (Doc. No. 159 in 04cv2085.)

---

[2] The Court assumes, without deciding, that defendant adopts the statements contained in the
Form S-1 by filing the instant motion to strike.

1    On September 7, 2005, plaintiff initiated the present action against the defendant.  (Doc.

2    No. 1.)  In the FAC filed on January 6, 2006, plaintiff alleged causes of action for intentional

3    interference with contractual relations and intentional infliction of emotional distress.  (Doc. No.

4    3.)  The plaintiff based these causes of action on the statements contained in the Form S-1 that

5    defendant caused Encore to file with the SEC.

6    On June 30, 2006, defendant moved to dismiss the FAC, arguing that plaintiff's claims

7    were barred by the statute of limitations and limitation-of-liability principles favoring

8    shareholders.  (Doc. Nos. 12 & 13.)  Judge Burns denied that motion on March 29, 2007.  (Doc.

9    No. 21.)  Defendant then filed its anti-SLAPP motion on August 1, 2007.  (Doc. No. 25.)  Rather

10   than file an opposition to the motion to strike, plaintiff instead moved for leave to conduct

11   discovery, pursuant to Federal Rule of Civil Procedure 56(f).  (Doc. No. 27.)  On August 28, 2007,

12   Judge Burns granted the parties' joint motion to continue the anti-SLAPP motion so the Court

13   could first decide the discovery motion.  (Doc. No. 30.)  On October 16, 2007, this Court[3] denied

14   plaintiff's discovery request, finding that the anti-SLAPP motion challenged the legal adequacy of

15   plaintiff's complaint, rather than the sufficiency of plaintiff's evidence.  (Doc. No. 39.)

16   **DISCUSSION**

17   Plaintiff argues that the law of the case doctrine bars the Court from considering

18   defendant's anti-SLAPP motion.  The law of the case doctrine precludes a court from

19   reconsidering an issue "that has already been decided by the same court, or a higher court, in the

20   identical case."  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  The doctrine is not

21   a limitation on a court's power, but a guide to discretion.  *Id.*  The court retains "discretion to

22   consider its prior, non-final decisions."  *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d

23   364, 369 (9th Cir. 1989).  A court may depart from the law of the case if "1) the first decision was

24   clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is

25   substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would

26   otherwise result."  *Alexander*, 106 F.3d at 876.

27

28   [3] On October 3, 2007, this action and the action against Encore were reassigned to the Hon. Janis L. Sammartino.

1     The law of the case doctrine does not preclude review of defendant's motion to strike for

2  two reasons.  First, Triarc was not a party to the Court's earlier motion to strike rulings.  Instead of

3  jointly suing Encore and Triarc, Moser sued Triarc separately in this action after the Court denied

4  Encore's motion to strike.  The cases are similar, but do not involve identical parties.  Second, the

5  Court retains discretion to review its prior decisions.  Assuming, arguendo, the motion involves

6  identical parties and issues, the Court may exercise its discretion and review defendant's anti-

7  SLAPP motion.

8     "[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law

9  claims."  *Verizon Del., Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  The

10  motion to strike "may be filed within 60 days of the service of the complaint or, in the court's

11  discretion, at any later time upon terms it deems proper."  Cal. Civ. Proc. Code § 425.16(f).

12     Given the two similar motions currently on appeal in the Ninth Circuit, the Court exercises

13  its discretion to hear defendant's anti-SLAPP motion.  Deciding the merits of the current motion

14  limits the possibility of a contradictory result and potentially allows for a consolidated appeal.

15     California's anti-SLAPP statute creates a special motion to strike "[a] cause of action

16  against a person arising from any act . . . in furtherance of the person's right of petition or free

17  speech . . . in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1).  The statute

18  protects "any written or oral statement or writing made in connection with an issue under

19  consideration or review by a legislative, executive, or judicial body, or any other official

20  proceeding authorized by law."[4]  *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th

21  1106, 1113 (Cal. 1999) (internal quotations omitted).  The California legislature enacted the

22  statute to stem "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the

23  constitutional rights of freedom of speech[.]"  Cal. Civ. Proc. Code § 425.16(a).  For policy

24  reasons, § 425.16 is construed broadly.  *Id.*

25     Deciding an anti-SLAPP motion requires a two-step analysis.  First, the court decides if the

26  _____

27     [4] Defendant also argues that the litigation privilege protects statements made in the Form S-1.
28  Since defendant does not maintain that the reach of the anti-SLAPP law is broader than the reach of the litigation privilege, the Court assumes that they are coterminous.  Because the Court finds the anti-SLAPP statute does not protect the defendant's statements the litigation privilege also does not apply.

defendant "has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002). If the defendant meets this burden, then, second, the Court "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.*

The statute's protection extends to communications intended to report wrongdoing or trigger an investigation. *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 368 (Cal. 2004). The "official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing." *Id.* at 362. It protects communications to "government officials which may precede the initiation of formal proceedings." *Id.* at 361 (internal quotations and citations omitted). The "critical question is the *aim* of the communication, not the forum in which it takes place. If the communication is made in anticipation of or designed to prompt official proceedings, the communication is protected." *Id.* at 368 (internal quotations, citations, and alterations omitted).

Based on public policy considerations, the privilege applies to complaints of wrongdoing or requests for investigation. The privilege promotes freedom of communication between citizens and the public officials charged with investigating and remedying wrongdoing. The benefit of allowing this freedom of communication "outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential." *Id.* at 364-65 (internal quotations, citations, and alterations omitted).

Courts consistently apply the privilege where the communication reported or complained about a wrongdoing or was intended to trigger an investigation. *See, e.g., Kashian v. Harriman*, 98 Cal. App. 4th 892, 926-27 (Cal. Ct. App. 2002) (letter to the Attorney General urging an investigation into a health care provider's tax-exempt status); *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1303 (Cal. Ct. App. 2000) (unfounded report to the DMV that a person was unfit to drive because of drug use); *Passman v. Torkman*, 34 Cal. App. 4th 607, 616-19 (Cal. Ct. App. 1995) (letter to District Attorney intended to prompt a criminal prosecution); *Tiedman v. Superior Ct.*, 83 Cal. App. 3d 918, 924-26 (Cal. Ct. App. 1978) (letter to IRS accusing a person of tax fraud); *Martin v. Kearney*, 51 Cal. App. 3d 309, 311 (Cal. Ct. App. 1975) (parents' letter to a

1   school principal seeking action regarding a teacher's poor performance); *King v. Borges*, 28 Cal.

2   App. 3d 27, 31-34 (Cal. Ct. App. 1972) (letter to the Department of Real Estate regarding an

3   agent's failure to release escrow funds).

4          The anti-SLAPP statute specifically protects communications made to trigger an

5   investigation by a government agency.  In *ComputerXpress, Inc. v. Jackson*, the defendants sent a

6   complaint letter to the SEC, alleging that certain press releases issued by plaintiff's corporate

7   predecessor distorted or exaggerated facts in order to drive up stock prices and report unrestricted

8   stock issued without proper disclosure.  93 Cal. App. 4th 993, 1008 (Cal. Ct. App. 2001).  The

9   court found that filing a complaint with the SEC "qualified at least as a statement before an official

10  proceeding" pursuant to § 425.16(e)(1).  *Id.* at 1009.  The court reasoned, "the purpose of the

11  complaint was to solicit an SEC investigation. . . . [T]he term 'official proceeding' has been

12  interpreted broadly to protect communications to or from government officials which may precede

13  the initiation of formal proceedings."  *Id.* (citation and emphasis omitted).  "Communication to an

14  official administrative agency *designed to prompt action by that agency* is as much a part of the

15  'official proceeding' as communications made after the proceeding has commenced."  *Id.* (internal

16  citations and quotations omitted, emphasis added).

17         At least one purpose of the communication must be to prompt an investigation.  In *Fontani*

18  *v. Wells Fargo Investments, LLC*,  Wells Fargo terminated a broker-dealer employee and filed a

19  Uniform Termination Notice for Securities Industry Regulation ("Form U-5") with the National

20  Association of Securities Dealers ("NASD"), as required by NASD by-laws.  129 Cal. App. 4th

21  719, 726 (Cal. Ct. App. 2005), *criticized on other grounds by Kibler v. N. Inyo County Local*

22  *Hosp. Dist.,* 39 Cal.4th 192 (Cal. 2006).[5]  In the Form U-5, Wells Fargo stated that the termination

23  was for "violation of company policies by misinterpreting information in the sale of annuities, not

24  being properly registered and firm procedures regarding annuity applications."  The filing resulted

25  in an NASD investigation of the former employee.  *Id.*  Even if no review actually took place, "an

26  NASD investigation is at least one potential consequence of a Form U-5 filing that contains

27

28          [5]   *Kibler*'s criticism regarding whether a hospital peer review constitutes an "official
    proceeding authorized by law" is not relevant to deciding the present motion.

05cv1742

1   allegations of improper conduct by a broker-dealer." *Id.* at 731.  The court held that § 425.16(e)(1)

2   protected the statements made in the Form U-5 because it was a communication to an official body

3   "designed to prompt official action." *Id.* at 731-32.

4         On the other hand, "[s]ection 425.16 does not accord anti-SLAPP protection to suits arising

5   from any act having any connection, however remote, with an official proceeding." *Blackburn v.*

6   *Brady*, 116 Cal. App. 4th 670, 677 (Cal. Ct. App. 2004).  In *Blackburn*, the plaintiff alleged that

7   the defendant made fraudulent statements at a sheriff's foreclosure sale, with the intent to

8   discourage other bidders and drive up the amount the plaintiff would have to bid to acquire the

9   property. *Id.* at 698-99.  The defendants filed an anti-SLAPP motion, claiming that the statements

10  were protected because they were made at the sheriff's sale. *Id.* at 700-01.  Without deciding

11  whether the sheriff's sale was an official proceeding authorized by law, the court concluded that

12  the statements were not made in connection with an issue under consideration or review in the

13  proceeding, so as to implicate protected free speech or petition activity. *Id.* at 701.  Specifically,

14  "[t]he ministerial event of a Sheriff's sale or auction simply does not concern an issue under

15  review or determine some disputed matter as contemplated under the anti-SLAPP law" and does

16  not involve "any determination based on the exercise of one's free speech or petition rights." *Id;*

17  *see Paul v. Friedman*, 95 Cal. App. 4th 853, 867-69 (Cal. Ct. App. 2002) (injecting an "issue into

18  [the underlying official proceeding authorized by law] does not render the issue relevant, nor can

19  the attempted injection of an irrelevant matter transform it into an issue 'under consideration or

20  review' in the proceeding").

21        The defendant argues that Plaintiff's's action is barred because it arises out of and is based

22  on communications in furtherance of their right of petition or free speech, since the offending

23  statements were made in a Form S-1 filed with the SEC.  The Court disagrees.

24        The anti-SLAPP statute does not protect defendant's statements made to authorize the sale

25  of its stock because the "critical question is the *aim* of the communication." *Hagberg*, 32 Cal. 4th

26  at 368 (internal citations omitted).  Unlike *ComputerXpress* or *Fontani*, defendant's statements

27  were not made to prompt an SEC investigation or report wrongdoing.  The Form S-1 was filed to

28  "permit Encore and/or Triarc to sell shares of Encore stock."  (Memo. ISO Motion, at 5.)

1   Although the SEC has authority to initiate a quasi-judicial proceeding, defendant filed the Form

2   S-1 to sell stock.  Unlike a complaint letter to the SEC or Form U-5, each of which is intended to

3   report some wrongdoing or trigger an investigation, defendant did not intend, and indeed would

4   not welcome, an SEC investigation because it would delay the sale of its stock, which was its

5   stated purpose for filing the Form S-1.

6          In addition, the statements regarding Moser's employment were not relevant to the SEC's

7   determination.  Similar to *Blackburn*, the specifics of the employment dispute between Moser and

8   Encore were irrelevant to the SEC's determination whether defendant may sell securities more

9   than two years after the employment dispute.  Defendant cannot transform the statements into an

10  issue under consideration or review in a proceeding by including them in the Form S-1.

11  Accordingly, the anti-SLAPP statute does not protect defendant's statements and the Court need

12  not consider whether the plaintiff has demonstrated a probability of prevailing on the claim.

13         To oppose the anti-SLAPP motion, plaintiff requested that the Court take judicial notice of

14  correspondence between the SEC and Encore.  Plaintiff offers the documents to prove that

15  defendant knew the SEC would not actually review the Form S-1.  Since the Court has concluded

16  that California's anti-SLAPP statute does not protect defendant's statements because defendant did

17  not intend to prompt an investigation or report wrongdoing, the Court need not decide whether the

18  documents may be judicially noticed.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

05cv1742

1

**CONCLUSION**

2        Defendant's purpose in filing the Form S-1 with the SEC was not to trigger an

3   investigation, and the statements regarding Moser's employment were not relevant to the SEC's

4   determination whether to approve defendant's sale of securities.  Therefore, the Court finds the

5   defendant failed to demonstrate that the acts of which the plaintiff complains were taken in

6   furtherance of the defendant's right of petition or free speech.  Accordingly, the Court **DENIES**

7   defendant's anti-SLAPP motion.  Having denied the anti-SLAPP motion, the Court **DENIES AS**

8   **MOOT** plaintiff's request for judicial notice.

9        IT IS SO ORDERED.

10  DATED:  July 8, 2008

11                                          Honorable Janis L. Sammartino
                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28